IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-50428
Summary Calendar
_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

MARTIN DARNELL COBB,
also known as Martin Cobb,

                                        Defendant-Appellant.

- - - - - - - - - -
Appeal from the United States District Court
for the Western District of Texas
USDC No. W-97-CR-49-1
- - - - - - - - - -
January 7, 1999

Before KING, BARKSDALE, and STEWART, Circuit Judges.

PER CURIAM:[*]

Martin Darnell Cobb appeals his sentence after his conviction by a jury of conspiracy to possess with intent to distribute crack cocaine and two substantive counts of distribution of crack cocaine.

Cobb argues that the district court clearly erred in finding that the two-level enhancement pursuant to U.S.S.G. § 3B1.1(c) applied. He argues that the evidence failed to show that he had a supervisory role over any of the other alleged participants. Cobb's argument at the sentencing hearing was directed against

_____

    [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the four-level increase of § 3B1.1(a), and he basically conceded that the two-level adjustment under § 3B1.1(c) would be appropriate.  Therefore, we review the district court's finding for plain error.  See United States v. Rodriguez, 15 F.3d 408, 414-15 (5th Cir. 1994).  Johnny Taylor and Jimmy Bragewitz testified that they and Remy Phillips sold crack for Cobb.  This testimony supports the district court's finding that Cobb was deserving of the two-level adjustment under § 3B1.1(c).  The district court did not plainly err in applying this adjustment.

Cobb argues that the district court erred in determining the applicable drug quantity.  He contends that the drug amount was based on unreliable information.  Cobb argues that the district court erroneously relied upon the probation officer's attribution of a "kilo of crack cocaine" based upon Cobb's admission to Medford that he received a kilo of "powder" cocaine.  The district court's calculation of the quantity of drugs involved for sentencing purposes is reviewed for clear error.  See United States v. Mergerson, 4 F.3d 337, 345 (5th Cir. 1993).

The probation officer stated that Cobb should be held accountable for one kilo of "crack" cocaine.  Earlier in the Presentence Report (PSR), the probation officer stated that Cobb had told Medford that he received his "Crack" from Mark Evans, who got his "Crack" from two brothers in Houston.  Cobb told Medford that the cocaine was bought in the powdered form by the kilo and that he had been to Houston with Evans.  Cobb denied at the sentencing hearing that he had told Medford that he bought a kilo of crack in Houston.

Even if Cobb did go to Houston with Mark Evans, it is not clear from the record that Cobb ever admitted that he bought a kilo of "crack" with Evans in Houston. His statement to Medford, as related in the PSR, can be interpreted as meaning that Evans bought the cocaine in powder form in Houston. There is no evidence in the record that this entire kilogram of powder was converted to crack for sale by Cobb. If Cobb possessed both powder cocaine and crack cocaine, the district court was required to convert both to marijuana under the drug equivalency table to determine a single offense level. U.S.S.G. § 2D1.1, comment. (n.10). The district court clearly erred in relying upon the PSR's representation that Cobb was responsible for one kilogram of "crack." Cobb's sentence is VACATED, and this case is REMANDED for resentencing. On remand, the district court shall make specific findings regarding the type and quantity of cocaine referred to in PSR ¶¶ 32 and 41(j), if it chooses to use such quantity in its sentencing determination.

Cobb contends that Jimmy Bragewitz told three different stories on three different occasions about when he first met Cobb and the duration of the period of his association with Cobb. Cobb testified under oath at his sentencing hearing that he met Bragewitz approximately two months before his arrest in early October. Cobb denied that Bragewitz went with him to Temple once a week from May to October 1996. He denied that Bragewitz ever went with him to Temple to buy "dope." Cobb argues that this difference in the period of his association with Bragewitz is crucial because Bragewitz claimed to have accompanied Cobb to

Temple, Texas, "at least once a week" from May to October 1996 to pick up crack, and that based on this testimony, the probation officer found that Cobb was responsible for 148.83 grams of crack. Cobb notes that the probation officer also credited Bragewitz' statement to Medford on May 28, 1997, that Cobb and Marshall would go to Temple alone, from May to October 1996, and purchase quarter-ounce cookies of crack at least three times a week, from which statement the probation officer calculated that Cobb was responsible for 446.51 grams of crack cocaine.

Cobb argues that the calculation of the above drug quantities is erroneous because the probation officer used the entire month of October 1996 when Cobb was arrested on October 7.[1] Cobb argues that, second, it was erroneous to base the drug amount on the period of May to October because Bragewitz testified that he was unsure of the period in question and that the district court should have erred on the side of caution in estimating the drug quantity. Third, Cobb argues that the district court did not make a factual finding regarding why he found Bragewitz' statements to Medford more credible than the testimony at the sentencing hearing. Additionally, Cobb argues that Bragewitz' testimony is unreliable and that Bragewitz is at best confused and at worst lying. Cobb notes that Bragewitz

---

[1] We note that the PSR explicitly states that the drug quantity is calculated as a certain number of grams per week for twenty-two weeks during the period from May to October 1996. Counting the first week of May 1996 as the first of the twenty-two weeks, the last week included in the PSR's calculation would be the last week of September or the first week of October 1996. Cobb is therefore incorrect about this point. As we discuss below, however, Cobb's sentence must be vacated for other reasons related to Bragewitz's testimony.

admitted that he was a methamphetamine addict, and he argues that his testimony should be received with caution. Lastly, Cobb argues that Bragewitz' testimony is unreliable because of his cooperation with authorities and lenient treatment in return. He concludes that Bragewitz' information cannot be considered reasonably reliable.

The sentencing court "shall resolve disputed sentencing factors at a sentencing hearing in accordance with Rule 32(c)(1), Fed. R. Crim. P." § 6A1.3(b). Rule 32(c)(1) provides that the district court "must rule on any unresolved objections to the presentence report" and for "each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary." A district court has wide discretion in determining which evidence to consider and which testimony to credit. United States v. Edwards, 65 F.3d 430, 432 (5th Cir. 1995).

The district court's only finding regarding the drug quantity was that "the amount of `crack' cocaine set forth in the Pre-Sentence Report is a conservative estimate." Cobb makes several arguments regarding why Bragewitz' testimony was unreliable. We do not consider Bragewitz' testimony to be unreliable per se. However, given Bragewitz' conflicting statements, his equivocation about the number of months he had been associated with Cobb, and Cobb's contradictory testimony, the district court was required to make findings regarding the indicia of reliability of Bragewitz' statements to Medford and to resolve the disputed sentencing factor presented by the factual

disputes between Bragewitz' statement and Cobb's testimony under oath. For this reason also, Cobb's sentence is VACATED and REMANDED for additional factual findings.

Cobb argues that the district court used an unsubstantiated amount of crack based on information provided by Taylor. Cobb notes that Taylor allegedly stated that Cobb purchased two to three cookies of crack in Houston in the summer of 1996. Cobb points out that the PSR stated, without substantiation, that the cookies weighed at least two ounces and used this information to determine that Cobb possessed 56.70 grams of crack cocaine. Cobb argues that the record does not contain any proof of how much these cookies weighed and that the PSR engaged in speculation that each cookie weighed one ounce. Cobb also adopts the same arguments he made in relation to Bragewitz regarding the unreliability of Taylor's statements due to Taylor's use of drugs and his cooperation with the Government.

There is some discrepancy between the statement reported in the PSR and Taylor's testimony at trial. At trial, Taylor referred to a "couple of cookies," and the PSR reports that Taylor referred to two to three ounces. Cobb testified at sentencing that the most he ever bought was "five-gram quarters" at a time. The district court made no specific finding regarding the weight of the cookies purchased in Houston. If the "couple of cookies" weighed only a quarter ounce each, then the amount of crack referred to in the PSR should have been only one-half ounce. On remand, the district court should clarify this amount by making a specific finding.

Cobb argues that the district court erred in adopting the PSR's drugs amounts that relied on statements by Clorinda Phillips. He notes that according to the PSR, Phillips told Medford that she had witnessed Cobb receive a "one-ounce cookie" each Friday from May through August, 1996.[2] The probation officer calculated that Cobb was thus responsible for 20 ounces (567 grams) of crack. Cobb notes that Phillips testified at the sentencing hearing that she had never made such a statement. Cobb contends that the district court did not sufficiently explain why it believed her former statement rather than her testimony.

Phillips testified at the sentencing hearing that she did not know how much crack Cobb sold, and she denied her statement to Medford. The district court apparently credited her earlier statement to Medford; however, the district court did not make a specific finding regarding the indicia of reliability of her prior statement or a finding resolving the factual dispute between her prior statement and her hearing testimony. On remand, the district court should clarify this amount by making a specific finding.

Cobb argues that the district court erred in relying on Medford's ballpark estimate for the amount of crack sold on "the

---

[2] We note, for whatever relevance it may have on remand, that although the PSR apparently relies on Agent Medford's report of Clorinda Phillips's debriefing for its conclusion that Cobb received a one-ounce cookie of crack every Friday from May through August 1996, Medford's report does not quote Phillips as saying that such a transaction occurred weekly from May through August 1996, only that Cobb usually received the cookie on Fridays and that his source had been bringing crack cocaine to Gatesville for the past three years.

Hill" attributable to Cobb. He argues that Medford's testimony did not have sufficient reliability to support its probable accuracy. The district court's single finding on drug quantity, that the amount of crack set forth in the PSR was a conservative estimate, appears to be based in large part, if not entirely, on Medford's agreement with the district court's statement that Cobb would have been accountable for substantially more than the 2.34 kilograms in the PSR. The district court discounted any problems or discrepancies with the specific amounts of crack listed in the PSR in the subsections to PSR ¶ 41. The district court relied on this general estimate in spite of Medford's testimony that all he could really base an amount on was the information he received in the debriefings as outlined to probation. The district court did not attempt to determine what amount of crack would equal one-quarter or one-half pound a week or to determine how many weeks were involved. The district court assumed that it would be more than the 2.34 kilograms outlined in the PSR. The district court clearly erred in relying on Medford's vague estimates rather than making findings of fact on the specific amounts listed in the PSR. For all the reasons discussed above, Cobb's sentence is VACATED and this case is REMANDED for resentencing.

Cobb argues that the district court erred in imposing a fine of $9,000. Cobb concedes that he made no objection to the imposition of the fine and that plain error applies. See Rodriquez, 15 F.3d at 414. The district court did specifically find that Cobb had an inability to pay, giving that reason for imposing a fine below the guideline range. Thus, there is no

reason to remand for a specific finding.  Despite that finding, the district court is not precluded from imposing a fine.  <u>United States v. Hodges</u>, 110 F.3d 250, 251-52 (5th Cir. 1997).  The district court did not commit plain error in imposing the fine.

SENTENCE VACATED; REMANDED FOR RESENTENCING IN ACCORDANCE WITH THIS OPINION.